UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DR. NORRIS HOLLIE,

    Plaintiff,

    v.

CONCENTRA HEALTH SERVICES, INC.,

    Defendant.

    _____/

No. C 10-5197 PJH

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    The parties' cross-motions for summary judgment came on for hearing before this court on March 7, 2012. Plaintiff Dr. Norris Hollie appeared by his counsel Chris LeClerc and Mark LeClerc, and defendant Concentra Health Services, Inc. ("Concentra") appeared by its counsel John Lee. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS Concentra's motion and DENIES plaintiff's motion.

## BACKGROUND

    Concentra, which is based in Texas, operates more than 300 medical clinics in 40 states, including California. These centers provide various occupational health, urgent care, physical therapy, and other health services. Concentra staffs its centers with full-time, salaried medical providers who receive benefits.

    Concentra also employs part-time providers who are paid on an hourly basis. These part-time providers are assigned to clinics as needed, whether on a regular basis to provide

routine care, or when extra assistance is required.  They also may fill in when a salaried provider is absent because of illness or is on vacation.  Plaintiff is a physician who was employed by Concentra as a part-time health provider, from September 1, 2007, until February 22, 2010, in various San Francisco Bay Area locations.

Throughout plaintiff's employment at Concentra, Dr. Peter Swann held the position of San Francisco Bay Area Medical Director, and supervised approximately seven medical clinics.  Each of those clinics employed both an Operating Director and a Medical Director.  Concentra considered both the Medical Director of whatever clinic plaintiff was assigned to, and Dr. Swann, to be plaintiff's supervisors.

On November 30, 2009, Dr. Swann sent an e-mail to clinics and providers, referencing the "Provider Timecard Operational Guidelines."  Dr. Swann stated that the guidelines had been communicated to him by his supervisor, Dr. Nick Peters, the Vice President of Medical Affairs for the Concentra "zone" that included the Bay Area.

These guidelines stated that providers' timecards must list no more than eight hours per day unless the provider had received prior authorization from the clinic Medical Director or Operations Director, or from Dr. Swann.  Any time beyond the eight hours per day could be paid only through an "EAF" initiated by the clinic and approved by Dr. Swann.  One of the criteria for approving time beyond 8 hours for patient care was that the extra time had to be at least 60 minutes.

There appears to be no dispute that these guidelines reflected Concentra's policy regarding payment for overtime, as communicated to its medical providers.  Plaintiff, and apparently a few other medical providers, complained to Dr. Swann about this policy and its fairness.  When Dr. Swann conveyed these complaints to Dr. Peters, he responded that the policy "wasn't an area open to discussion."

In the complaint, plaintiff alleges that from November 30, 2009 (the date of Dr. Swann's e-mail), it was Concentra's policy to accept patients up to the last minute before the clinics closed for the day.  He asserts further that prior to November 30, 2009, he had been paid whenever he worked overtime, but that after Dr. Swann's e-mail, he could not

request prior authorization for overtime because the need could not be anticipated until it actually happened, and because the clinic Medical Director or clinic Operations Director was usually not present at those exact times.

On December 10, 2009, plaintiff worked at the Concentra Medical Center in San Leandro. At 6:00 p.m., he exited the clinic, leaving (according to Concentra) an already-processed physical exam and an injury patient behind. As he left, plaintiff stated, "I don't get paid for staying late." Dr. Swann spoke to plaintiff about this conduct, and told him that leaving patients behind was unacceptable, and that Concentra would not tolerate providers leaving a clinic while patients were waiting.

Again, on February 16, 2010, plaintiff left the clinic where he was assigned to work after his eight-hour "shift" had ended, but while patients still remained to be seen. On February 19, 2010, Dr. Dennis Stephens, Medical Director for the San Leandro Medical Center, told plaintiff he was not to leave at the end of the day while patients remained. Plaintiff also received a message from Dr. Swann about his departure, stating that if he did not receive a reason for plaintiff's departure from the clinic, he would take him off the schedule.

On February 18, 2010, in response to Dr. Swann's message, plaintiff sent an e-mail stating that he felt it was grossly unfair for Concentra to expect its medical providers to work without compensation. According to plaintiff, Dr. Swann responded that the policy was a "Dallas" (headquarters) policy, and that it would not change.

On February 22, 2010, Dr. Swan and Dr. Stephens had an e-mail exchange regarding plaintiff. Dr. Stephens stated that plaintiff had said he felt it was unfair and "possibly illegal" that he did not receive overtime for time beyond his shift, unless he stayed at least a full hour beyond. Dr. Stephens stated that he had told plaintiff that he could not leave patients who had been checked in and were waiting to be seen, and that if his eight hours was up and patients remained to be seen, he should see them and "address compensation issues at a later time." Dr. Stephens also stated that he advised plaintiff to call Dr. Swann, but wasn't sure if he had followed through.

3

Also on February 22, 2010, plaintiff worked at the Concentra clinic on Sutter Street in San Francisco. He explained in his deposition that shortly before 4:00 p.m., when no patients remained to be seen, he went back to his office to dictate. At that point he was the only medical provider on the premises. At 5:00 p.m. he was called in (via the intercom) to see another patient. He did not respond to the call, because he had already worked more than eight hours. He resumed dictating and left the clinic at about 5:15 p.m.

Following this incident, Dr. Swann removed plaintiff from the schedule completely. In an e-mail dated February 26, 2010, Dr. Swann stated that he would be willing to talk to plaintiff about this at any time, but that "clinicians cannot leave while there are patients to care for." He again suggested that plaintiff call him to discuss the matter.

In response, plaintiff e-mailed Dr. Swann. In the e-mail, he stated that it was the responsibility of Dr. Choo, the Medical Director of the Sutter Street clinic, to make sure that everything was in order before she left for the day, and that if a patient was not seen, it should not be blamed on plaintiff, when Dr. Choo was the salaried employee with benefits.

Plaintiff filed the present action on October 8, 2010, in Alameda County Superior Court, asserting three causes of action – (1) a claim of retaliation in violation of California Labor Code §§ 98.6 and 1102.5(c); (2) a claim of wrongful termination in violation of public policy (based on public policy in Labor Code §§ 98.6 and 1102.5; and (3) a claim of intentional infliction of emotional distress. Concentra removed the case to this court on November 16, 2010.

Concentra now seeks summary judgment as to all three causes of action, and plaintiff seeks partial summary judgment as to whether his refusal to work without pay is a protected activity under Labor Code § 98.6 and § 1102.5 as a matter of law.

**DISCUSSION**

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a

4

matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.  The Parties' Motions

    1.  Retaliatory termination in violation of the Labor Code

Concentra argues that summary judgment must be granted as to the first cause of action because plaintiff cannot establish a prima facie case of retaliation under Labor Code § 1102.5 and § 98.6. Plaintiff seeks summary adjudication of a single issue – whether an employee's refusal to work, during periods in which the employer has communicated to the employee that he will not be compensated, is a protected activity under § 1102.5 and § 98.6.

In addressing a retaliation claim at the summary judgment stage, courts utilize a burden-shifting analysis. First, the plaintiff must establish a prima facie case of retaliation. If the plaintiff is successful, the burden shifts to the defendant to respond with a legitimate, nondiscriminatory reason for its actions. The burden then shifts back to the plaintiff to establish that the reason for the adverse action was a pretext or cover-up for the unlawful retaliation. Muniz v. United Parcel Serv., Inc., 731 F.Supp. 2d 961, 969 (N.D. Cal. 2010); Mokler v. County of Orange, 157 Cal. App. 4th 121, 138 (2007).

To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a protected activity, (2) that his employer subjected him to adverse employment action, and (3) that there is a causal link between the two. Muniz, 731 F.Supp. 2d at 969; Mokler, 121 Cal. App. 4th at 138.

Concentra asserts that plaintiff cannot establish a prima facie case because he cannot show a causal connection between his alleged protected activity and the alleged adverse employment action (removal from the schedule or termination).

Concentra argues that after twice being told – in December 2009 and in February 2010 – that he was not to leave clinics while patients were waiting, plaintiff nonetheless walked out of the Sutter Street clinic in San Francisco while a patient was waiting. Concentra asserts that it was only after this incident that Dr. Swann removed plaintiff from the schedule, and that it was plaintiff's act of leaving the clinic unstaffed that constituted the cause of plaintiff's termination. Concentra also asserts that even if plaintiff could establish a prima facie case of retaliation, it had a legitimate, non-retaliatory reason for terminating plaintiff – that he was removed from the schedule because he abandoned patients.

In opposition, plaintiff argues that where there is direct evidence of discriminatory intent, there is no need to go through the McDonnell-Douglas burden-shifting analysis. Plaintiff asserts that he left the clinic because he was told he would not be compensated for working, and that Concentra has conceded that it terminated him for refusing to work without compensation. He argues that the direct evidence of retaliatory intent is shown by Dr. Swann's statement in response to plaintiff's e-mail – that plaintiff evidently would prefer

6

1 not to work for Concentra unless they change the practice, but that the policy came from
2 Dallas and would not change.

3 In addition, plaintiff argues that he can satisfy the elements under the burden-
4 shifting analysis.  He contends that he engaged in a protected activity by protesting
5 Concentra's policy, and that leaving the clinic at the end of his eight-hour shift was also a
6 protected activity, because it was a complaint "by conduct."  He asserts that there was a
7 causal relationship between the protected activity (complaints and protests by leaving work)
8 and his termination, because he was terminated for leaving work without seeing all the
9 patients.

10 As for Concentra's argument that it had a legitimate, non-retaliatory reason for
11 terminating plaintiff, plaintiff contends that Dr. Swann left direct evidence in his e-mail that
12 he was retaliating against plaintiff for his "protests" – i.e., leaving work.

13 The court finds that summary judgment must be GRANTED in favor of Concentra,
14 and that plaintiff's motion must be DENIED.  Regardless of whether plaintiff was terminated
15 because he complained to his superiors (which is not supported by the evidence) or
16 because he walked off the job at the end of his shift, leaving patients waiting, the court
17 finds as a matter of law that those actions do not constitute protected activities under either
18 Labor Code § 1102.5 or Labor Code § 98.6.

19 Labor Code § 1102.5 is a whistleblower statute.  Its purpose is to encourage
20 workplace whistleblowers to report unlawful acts without fearing retaliation.  See Green v.
21 Ralee Eng'ng Co., 19 Cal. 4th 66, 77 (1998).  Section 1102.5 prohibits preventing an
22 employee from disclosing information to a government or law enforcement agency, and
23 prohibits retaliating against an employee for disclosing information to a government or law
24 enforcement agency – in other words, retaliating against a whistleblower employee.  Cal.
25 Lab. Code § 1102.5(a), (b).  Plaintiff in this case does not assert that he was retaliated
26 against because he disclosed information to a government or law enforcement agency, or
27 that he was prevented from doing so.

28 Section 1102.5 also prohibits an employer from retaliating against an employee for

1  "refusing to participate in an activity that would result in a violation of state or federal
2  statute, or a violation or noncompliance with a state or federal rule or regulation, or a
3  violation or noncompliance with a state or federal rule or regulation." Id. § 1102.5(c).
4  Plaintiff argues that an employer cannot require an employee to engage in a criminal act to
5  further its interests, and may not discharge an employee who refuses to follow such an
6  order.  He contends that Concentra was attempting to get him to engage in conduct that
7  would be a violation of state and federal law, and that § 1102.5(c) therefore applies.

8  While it is true that it is unlawful under California's labor laws for an employer to
9  refuse to pay hourly non-exempt employees for time they have worked, an employee who
10 works without pay is not "participat[ing] in" or engaging in, a criminal act, as plaintiff claims.
11 Accordingly, the court finds as a matter of law that plaintiff cannot establish that he
12 engaged in an act protected under § 1102.5(c).[1]

13 Labor Code § 98.6 prohibits discharge or discrimination against an employee or an
14 applicant for employment "because the employee or applicant engaged in any conduct
15 delineated in" Chapter 4 of Division 1, or Chapter 5 of Part 3 of Division 2 of the Labor
16 Code, or "because the employee or applicant for employment has filed a bona fide
17 complaint or claim or instituted or caused to be instituted any proceeding under or relating
18 to his or her rights."  Cal. Lab. Code § 98.6(a).

19 Under § 98.6, employers may not discharge or discriminate against an employee for
20 political activities; for whistleblowing; for assigning wage claims to the Labor Commissioner
21 resulting from demotion, suspension, or discharge for lawful conduct occurring during
22 nonworking hours away from employer's premises; for filing a complaint with the Labor
23 Commissioner or testifying in such proceedings; for initiating proceedings against the
24 employer to collect civil penalties under the "Labor Code Private Attorneys General Act;"

---

[1] In addition, the court notes that Labor Code § 1194 provides a private right of action to enforce violations of minimum wage and overtime laws.  See Gentry v. Superior Court, 42 Cal. 4th 443, 455 (2007).  While plaintiff has presented no evidence here that he was not compensated for overtime, any hourly employee who is eligible to receive overtime pay, but is not compensated for time worked over eight hours, can (among other things) seek relief under § 1194.

8

and for exercising "any rights afforded him or her." See Lab. Code § 98.6(a); Ming W. Chin, et al., California Practice Guide: Employment Litigation (2011) §§ 7:1476, et seq.

While § 98.6(a) appears to broadly proscribe terminations for the exercise of "any rights," the California Court of Appeal in Grinzi v. San Diego Hospice Corp., 120 Cal. App. 4th 72 (2004), thoroughly analyzed the statute, and concluded that this prohibition can be applied only to conduct protected by the Labor Code.

The court first noted that in amending the relevant language of § 98.6, the California Legislature had included a section that provides findings and declarations of policy as follows:

> The Legislature finds and declares that, absent the protections by the Labor Commissioner, working men and women are ill-equipped and unduly disadvantaged in any effort to assert their individual rights otherwise protected by the Labor Code. The Legislature finds it necessary and appropriate to provide employees an inexpensive administrative remedy for the pursuit of their rights under the Labor Code. The Legislature further declares that this act is necessary to further the state interest in protecting the rights of individual employees and job applicants who could not otherwise afford to protect themselves.

Stats. 2001, ch. 820, § 1, p. 5201, quoted in Grinzi, 120 Cal. App. 4th at 87.

Next, the court found that "[b]y so specifying rights 'otherwise protected by the Labor Code' and 'under the Labor Code,' the Legislature ha[d] indicated an intention to limit the proscription against terminations for the exercise of 'any rights' to the exercise of those rights 'otherwise protected by the Labor Code.'" Id. The court noted further that § 98.6(a) "proscribes terminations for several kinds of conduct delineated in 'this chapter,' including conduct under section 96, subdivision (k), and 'Chapter 5 of Part 3 of Division 2,' or filing claims or proceedings with the Labor Commissioner[,]" and that as such, § 98.6(a) prohibits only terminations for conduct "otherwise protected by the Labor Code." Id.

The court also quoted the Legislative Counsel's Digest for § 98.6, which explained that existing law

> prohibits an employer from discriminating against any employee because the employee has filed a claim with or instituted a proceeding before the Labor Commissioner relating to the employee's rights, because the employee testifies or will testify in such a proceeding, or because the employee exercised, on behalf of himself, herself, or others, rights afforded employees

9

> by the Labor Code. Existing law provides for reinstatement of and the payment of lost wages and work benefits to any employee who is subjected to adverse employment action because the employee filed a bona fide complaint with the Division of Industrial Relations. Existing law makes it a misdemeanor for an employer to take adverse employment action against employees who file bona fide complaints.

Legis. Counsel's Dig., Assem. Bill No. 1015 (2001-2002 Reg. Sess.), quoted in Grinzi, 120 Cal. App. 4th at 87-88. The court concluded that the Digest reflects legislative intent to "'expand existing prohibitions" to include conduct already delineated in Chapter 4 of Division 1 (Division of Labor Standards Enforcement) and Chapter 5 of Part 3 of Division 2 (Political Affiliations) of the Labor Code, and that it does not support an expansion of existing prohibitions beyond the specified statutory categories. Grinzi, 120 Cal. App. 4th at 88.

    The basis of plaintiff's § 98.6 claim is that he "complained" – verbally and in e-mails – to his supervisors Dr. Swann and Dr. Stevens about Concentra's policy of not paying for overtime for medical providers unless the time period exceeded 60 minutes and the payment was approved by the medical provider's supervisor(s); and that he also complained about the policy "by conduct" – i.e., by leaving the clinic after he had worked eight hours – and that that "protest" was also a "complaint" and thus a protected activity.

    Plaintiff argues that even if the court determines that his protest "by conduct" is not a protected activity, triable issues remain as to whether his verbal and e-mail protests (which Concentra refers to in its papers as "protected activities") provided a motivation for Concentra's removing him from the work schedule. However, the court finds as a matter of law that neither the verbal/e-mail protests, nor the protests "by conduct," were activities protected under § 98.6, because they do not fall within the categories set forth in that statute.

    2.    Retaliatory termination in violation of public policy

    Concentra contends that summary judgment should be granted as to the second cause of action for wrongful termination in violation of public policy because plaintiff cannot establish any nexus between his termination and any protected activity.

10

"[A]n employer's traditional broad authority to discharge an at-will employee may be limited by statute . . . or by considerations of public policy." <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167, 172 (1980).  The public policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." <u>Freund v. Nycomed Amersham</u>, 347 F.3d 752, 758 (9th Cir. 2003) (quoting <u>City of Moorpark v. Superior Court</u>, 18 Cal. 4th 1143, 1159 (1998)).

In general, the elements of a claim for wrongful termination in violation of public policy are (1) an employer-employee relationship; (2) an adverse employment action, (3) that the adverse employment action violated public policy, and (4) the adverse employment action caused the employee damages.  <u>Haney v. Aramark Uniform Servs., Inc.</u>, 121 Cal. App. 4th 623, 641 (2004); <u>see also</u> <u>Miklosy v. Regents of Univ. of Cal.</u>, 44 Cal. 4th 876, 900 (2008).  That is, the plaintiff must establish the existence of a public policy and a nexus between the public policy and an employee's termination.  See <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238, 1258-59 (1994).

Concentra argues that the claim of termination in violation of public policy fails for the same reason as the first cause of action for retaliation – because plaintiff cannot establish the required nexus between his protected activity and his termination.  In opposition, plaintiff argues that Concentra is incorrect, for the same reason it is incorrect that the retaliation claim alleged in the first cause of action fails.  In addition, plaintiff asserts that the public policy contained in Labor Code § 90.5(a) promotes the full and complete payment of all wages.

The court finds that the motion must be GRANTED.  The common law cause of action for tortious discharge "cannot be broader than the constitutional provision or statute on which it depends." <u>City of Moorpark</u>, 18 Cal. 4th at 1159.  Thus, to the extent that the public policy claim is based on Labor Code § 1102.5 or § 98.6, plaintiff has not established that he engaged in any action protected by those statutes, and therefore cannot establish a

11

1  causal connection between his termination and any protected activity.  See Dept. of Fair
2  Employment and Housing v. Lucent Techs., Inc., 642 F.3d 728, 748-49 (2011) (where
3  plaintiff failed to establish existence of genuine issue of material fact as to FEHA claim, it
4  could not prevail on wrongful termination claim based on public policy in FEHA).

   Moreover, the public policy in Labor Code § 90.5 provides no support for plaintiff's claim.[2]  Wrongful termination claims involving a Tameny cause of action are limited to "those claims finding support in an important public policy based on a statutory or constitutional provision."  Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 79 (1998); see also Silo v. CHW Med. Found., 27 Cal. 4th 1097, 1104 (2002).  That is, the Tameny claim must be "carefully tethered to" the fundamental public policy.  Silo v. CHW Med. Found., 27 Cal. 4th 1097, 1104 (2002).

   In § 90.5, the Legislature declared that it is the policy of California

> to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

Cal. Lab. Code § 90.5(a).  This statement of general objectives subsumes within it a number of goals –

> to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees.

Lusardi Construction Co. v. Aubry, 1 Cal. 4th 976, 987 (1992).

   Plaintiff contends that under § 90.5, his departure from work was a protected activity as a matter of law, because the statute expresses a policy of ensuring that California employees not be required to work under "substandard unlawful conditions or for employers that have not secured the payment of compensation."  It seems clear, however,

---

[2] The court also notes that plaintiff did not allege in the complaint that § 90.5 provides a basis for the Tameny claim.

12

that the public policy expressed by § 90.5 is the public policy of "vigorously enforcing minimum labor standards." See Sheet Metal Workers Int'l Ass'n v. Rea, 153 Cal. App. 4th 1071, 1078 (2007). California's prevailing wage law is a minimum wage law. Reyes v. Van Elk, Ltd., 148 Cal. App. 4th 604, 611-12 (2007). Here, plaintiff does not assert that Concentra was in violation of the prevailing wage law. Indeed, it is undisputed that at the time he was taken off the schedule, plaintiff was being compensated at a rate of $ 78.40 per hour.

In addition, the public policy that provides a basis for the Tameny claim must be described in detail in the statute or constitutional provision. The statute or constitution need not proscribe the precise act of which the employer is accused, but it must "sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." Sequoia Ins. Co. v. Superior. Court, 13 Cal. App. 4th 1472, 1480 (1993).

For example, prompt payment of wages due an employee (required by Labor Code § 216(a)) is a fundamental public policy of this state, serving the interest of the public at large, not merely the interest of the employee to whom the wages are due. See Gould v. Maryland Sound Industries, Inc., 31 Cal App. 4th 1137, 1147 (1995); see also Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 574 (1998).

Here, however, plaintiff does not allege that he was not paid, but rather that Concentra announced that it would not pay overtime unless the employee sought prior approval, and unless the amount of time exceeded one hour. If a statute or constitutional provision does not explicitly prohibit the employer's conduct and omits any sanctions for noncompliance, there is a strong inference that it does not establish a fundamental public policy that could support a wrongful termination claim. Carter v. Escondido Union High School Dist., 148 Cal. App. 4th 922, 930-31 (2007). The "policy" stated in § 90.5 does not prohibit termination, retaliation, or any other adverse action; it simply states that it is the policy of the State to "vigorously enforce" minimum wage laws. For this reason, plaintiff's Tameny claim is not "carefully tethered" to any public policy stated in § 90.5.

13

### 3. Intentional infliction of emotional distress

Concentra argues that summary judgment should be granted as to the claim for intentional infliction of emotional distress, because, in the absence of a viable retaliation claim, all that remain are "normal personnel actions" that cannot serve as the basis for a claim of intentional infliction of emotional distress. Plaintiff appears to concede that the claim depends on the viability of the retaliation claims.

The court finds that the motion must be GRANTED. Under California law, the tort of intentional infliction of emotional distress comprises three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998).

Generally, in California, injuries sustained by employees in the course of employment are governed by the workers' compensation law. See Cal. Lab. Code, § 3600 et seq. Such injuries are preempted by the exclusivity provisions of that law and are not compensable in a civil action. Id. § 3602. Preemption under the workers' compensation law includes claims for intentional infliction of emotional distress based on actions that are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances. See Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 159-160 (1987); see also Miklosy, 44 Cal. 4th at 902-03.

Plaintiff argues that California courts have held that claims of intentional and negligent infliction of emotional distress that are based on an employer's conduct that contravenes fundamental public policy or exceeds the risks inherent in the employment relationship are not subject to workers' compensation law preemption. See Livitsanos v. Superior Court, 2 Cal. 4th 744, 754 (1992); Cabesuela v. Browning-Ferris Indus. of Calif., Inc., 68 Cal. App. 4th 101, 112-13 (1998). The California Supreme Court recently clarified, however, that where the alleged unlawful conduct occurs at the worksite in the normal

14

course of an employer-employee relationship, worker's compensation is the exclusive remedy for any injury that results; and that the exception for conduct that "contravenes fundamental public policy" simply means that a <u>Tameny</u> claim is not preempted by the worker's compensation exclusive remedy rule (but the intentional infliction of emotional distress claim is). <u>Miklosy</u>, 44 Cal. 4th at 902-03.

Thus, because the court finds that summary judgment must be granted in Concentra's favor as to the first two causes of action, there can be no intentional discrimination or retaliation, and plaintiff cannot maintain a cause of action for intentional infliction of emotional distress. And were summary judgment not granted as to the first two causes of action, the intentional infliction of emotional distress claim would be preempted by workers' compensation laws.

## CONCLUSION

In accordance with the foregoing, the court GRANTS Concentra's motion and DENIES plaintiff's motion.

**IT IS SO ORDERED.**

Dated: March 23, 2012

PHYLLIS J. HAMILTON
United States District Judge